UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARIO T. TUCKER,

        Plaintiff,

    v.                                  Case No. 23-C-1317

MICHELLE GONZALEZ,
AARON BAMKE,
ZACHARY SANGRAW, and
JOSELUIS RAMIREZ,

        Defendants.

---

## DECISION AND ORDER GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Mario Tucker, who is incarcerated at Green Bay Correctional Institution (GBCI) and representing himself, is proceeding on Eighth Amendment claims based on allegations that Defendants were deliberately indifferent to his serious medical condition. On August 9, 2024, Defendants filed a motion for summary judgment. Dkt. No. 22. For the reasons explained in this decision, the Court will grant Defendants' motion and dismiss this action.

## BACKGROUND

At all relevant times, Tucker was housed at GBCI, where Defendants Michelle Gonzalez and Aaron Bamke worked as correctional sergeants and Defendants Joseluis Ramirez and Zachary Sangraw worked as correctional officers. Tucker has been diagnosed with type 1 and type 2 diabetes and has been prescribed insulin to lower his blood sugar level. It is important that he take the correct amount of insulin because too much insulin in his bloodstream could lead to

dangerously low glucose levels. If a person has a low blood sugar level, taking insulin would be dangerous because it would lower his blood sugar even further. Dkt. No. 42 at ¶¶19-23.

Tucker can regularly check and log his blood sugar levels by requesting an Accu-Chek test. Defendants note that Tucker did not log his blood sugar levels for the entire month of April 2023. Tucker denies that he has ever been negligent in managing his diabetes; he explains that correctional officers are responsible for providing him with Accu-Chek tests and for recording the results. Although Tucker references being "repeatedly denied" an Accu-Chek test, he details no specific instances of being denied a test. Tucker was also prescribed Metformin to treat his diabetes. Like insulin, which treats type 1 diabetes, Metformin, which treats type 2 diabetes, helps control the amount of glucose in a person's blood. *See Metformin (oral route)*, MAYO CLINIC https://www.mayoclinic.org/drugs-supplements/metformin-oral-route/ description/drg-20067074 (last visited Dec. 19, 2024). On April 9, 2023, Tucker received doses of Metformin at 6:38 a.m. and 3:14 p.m.; he received another dose the next morning at 6:13 a.m. *Id.* at ¶¶24-29; Dkt. No. 43 at ¶¶14-16, 20.

On that day, Sangraw was assigned to work on Tucker's wing at 10:00 p.m. By the time he started his shift, medication delivery was complete. At about 10:30 p.m., Sangraw completed a security round, at which time Tucker asked him who else was working that night. Sangraw did not respond. Less than an hour later, at about 11:11 p.m., Sangraw completed another security round. Footage from Sangraw's body-worn camera reveals someone (presumably Tucker) saying, "You guys going to give me my meds tonight? My insulin?" Sangraw does not remember hearing Tucker say anything, and it is undisputed that Sangraw did not respond. Dkt. No. 42 at ¶¶31-35.

Ramirez worked on April 9, 2023, from 2:00 p.m. until 6:00 a.m. on April 10, 2023. He was not responsible for handing out medication on Tucker's wing on April 9 or 10. Ramirez

2

completed a security round at about 3:00 a.m. on April 10, 2023. He asserts that Tucker did not say anything to him, but Tucker asserts that he informed Ramirez that he did not get his medication. Gonzalez worked on April 9, 2023, beginning at 10:00 p.m. until 4:00 p.m. on April 10, 2023. She was assigned to Tucker's wing, but she was not responsible for handing out medication on April 9 or 10. At about 5:30 a.m. on April 10, 2023, while conducting a security round, she asked Tucker how he was doing. Tucker asserts that he asked for his insulin. Ramirez responded, "Not right now, Tucker." *Id.* at ¶¶36-42.

Bamke worked on April 9, 2023, from 6:00 p.m. until 10:00 a.m. on April 10, 2023. He was not responsible for evening medication delivery on April 9, but he did assist with morning medication delivery on April 10. Medical records confirm that Tucker received his morning dose of Metformin at 6:13 a.m. on April 10, 2023, but Tucker did not receive his insulin. Defendants do not explain how often Tucker was supposed to receive insulin, nor do they explain why he did not receive insulin on the evening of April 9 or the morning of April 10. Bamke asked Tucker if he wanted an Accu-Chek to test his blood sugars, but Tucker did not respond. *Id.* at ¶¶43-47.

At about 9:45 a.m. on April 10, 2023, Tucker was seen by Nurse Rachel Matushak (who is not a Defendant) who recorded that Tucker had a blood sugar level of 173, which was not a cause for concern. Tucker refused labs that would have provided a clearer picture of his blood sugar levels over the past two or three months. Tucker asserts that he told the nurse that he had not received his insulin the night before, but the nurse did not record this information in Tucker's medical record. On April 25, 2023, Dr. Barry Daughtry (who is not a Defendant) noted in Tucker's medical records that his "glargine insulin was apparently stopped in February by accident but he is back on it now." It is not clear when the insulin was restarted; the records provided by the

parties do not indicate that Tucker received insulin on April 10 when he was seen by Nurse Matushak. *Id.* at ¶¶48-51; Dkt. No. 29-1 at 2-4.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Tucker asserts that Defendants violated the Eighth Amendment when they ignored his statements that he had not received insulin at the evening medication pass on April 9, 2023. A prison official who acts with deliberate indifference to a substantial risk of serious harm to an inmate's health violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) "To establish an entitlement to damages for such a violation, the prisoner must provide evidence

4

that he presented an objectively serious medical need that a defendant correctional officer responded to with deliberate indifference, thereby resulting in some injury." *Lord v. Beahm*, 952 F.3d 902, 904 (7th Cir. 2020). "[A] plaintiff must establish not only that a state actor violated his constitutional rights, but also that the violation *caused* the plaintiff injury or damages." *Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011) (emphasis in original).

Tucker's "claim fails on the basic proposition that he has sued for damages under § 1983 and alleged a constitutional tort (an Eighth Amendment violation) without then developing evidence of a recoverable injury." *Lord*, 952 F.3d at 905. Insulin is needed to address a high blood sugar level, but Tucker's medical records demonstrate that on the morning after he missed his evening dose of insulin, his glucose level was 173, which was not a cause for concern. In other words, because Tucker's blood sugar level remained in an acceptable range, Tucker was not negatively impacted by having missed his evening dose of insulin. Tucker asserts that he felt dizzy and in pain but given that his blood sugar level was not problematic, there is no evidence that reasonably suggests that his symptoms were caused by missing his evening dose of insulin.

Further, even if Tucker had presented evidence that his symptoms were caused by missing a single dose of insulin (which he has not), he offers no evidence to support a conclusion that Defendants were deliberately indifferent to those symptoms. Tucker states under penalty of perjury that, "[o]n April 9, 2023, [he] asked Officer Sangraw, Ramirez, Gonzalez and Bamke for [his] insulin over and over again." Dkt. No. 43 at ¶17. Tucker does *not* state that he informed any of the defendants that he was feeling dizzy or weak or that he informed any of them that he had passed out.[1] The evidence also shows that Tucker stopped Defendants to inform them he had not

---

[1] Tucker states generally in his declaration that he "continued to complain that [he] wasn't feeling well, in pain, dizzy and that my blood sugar was too low but again my complaints fell on

5

received his insulin while they were performing other duties such as security rounds. The Constitution does not require that prison staff drop everything they are doing to respond to a prisoner's request or complaint. Requiring such an approach would bring prison operations to a standstill. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen."). No evidence suggests that Defendants knew Tucker was experiencing a medical emergency or needed immediate medical treatment when he informed them that he had missed a dose of insulin, and their failure to appreciate the potential significance of missing a single dose is at most negligence, which is not actionable under the Constitution. *See Campbell v. Kallas*, 936 F.3d 536, 545 (7th Cir. 2019) ("To prove deliberate indifference, mere negligence is not enough. A plaintiff must provide evidence that an official actually knew of and disregarded a substantial risk of harm." (cleaned up)).

In short, Tucker presents no evidence supporting a conclusion that he suffered an injury because he missed a single dose of insulin and, even if he had, he presents no evidence that Defendants knew of and disregarded the substantial risk of harm that Tucker allegedly faced from having missed a single dose. For these reasons, Defendants are entitled to summary judgment.

## CONCLUSION

For these reasons, Defendants' motion for summary judgment (Dkt. No. 22) is **GRANTED**, Tucker's motion for an extension of time to respond to Defendants' summary

---

deaf ears," Dkt. No. 43 at ¶10, but this statement is too vague for the Court to conclude that Tucker made the defendants (as opposed to other staff members) aware of his symptoms.

judgment motion (Dkt. No. 40) is **DENIED as moot**, Defendants' motion to strike Tucker's sur-reply (Dkt. No. 47) is **DENIED as moot**, and this action is **DISMISSED**.  The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED at Green Bay, Wisconsin this 19th day of December, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

This order and the judgment to follow are final.  Plaintiff may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment.  *See* Fed. R. App. P. 3, 4.  This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A).  If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome.  If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this court.  *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious.  *See* 28 U.S.C. § 1915(g).  If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury.  *Id.*

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b).  Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment.  Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment.  The court cannot extend these deadlines.  *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.